

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-22340-HOEVELER

**LA GORCE COUNTRY CLUB, INC.,**

Plaintiff,

v.

**UNDERWRITERS AT LLOYD'S OF LONDON,**

Defendant.

---

## ORDER OF DISMISSAL

BEFORE the Court is a motion to dismiss the complaint for lack of subject matter jurisdiction filed by all but one the defendant Underwriters. The movants submit that the plaintiff and one of the Underwriters are both Florida citizens, thereby destroying complete diversity. The plaintiff agrees and seeks dismissal of the entire case, including a counterclaim by the non-moving Underwriter, Beazley Underwriting Limited. Beazley opposes dismissal of its counterclaim. For the reasons that follow, the motion to dismiss is GRANTED and both the complaint and the counterclaim are dismissed, without prejudice.

### Background

The following facts come from the plaintiff's complaint. La Gorce Country Club, Inc. ("La Gorce") is a Florida corporation that owns the La Gorce golf course in Miami Beach. In 2001, La Gorce hired the geological consulting firm Gerhardt M. Witt & Associates, Inc. ("GMWAI") to oversee the implementation of a "reverse osmosis"

water treatment system to desalinate brackish water. After the project was completed, La Gorce began using the desalinated water to irrigate the golf course. Unfortunately the grass soon began to die. About a year later, "as a result of the system's inherent design defects," the water treatment facility was shut down and La Gorce resumed using the municipal water supply.

La Gorce sued GMWAI and its principal geologist, Gerhardt Witt, in state court for negligence and professional malpractice. The defendants were insured under a policy of liability insurance from Underwriters of Lloyd's, London, with policy limits of $1 million.[1] The Underwriters assumed the defense of the lawsuit and engaged in settlement negotiations. La Gorce initially demanded $3 million and Lloyd's offered $500,000, which La Gorce rejected. During trial, La Gorce proposed settlement for $750,000 and Lloyd's counter-offered $500,000, which La Gorce again rejected. After a bench trial, the state court judge concluded that GMWAI and Mr. Witt were liable for malpractice and entered final judgment against GMWAI for $147,704 and against Mr. Witt for $4,061,243.[2]

La Gorce then filed this bad faith lawsuit against the Underwriters in federal court based on diversity jurisdiction,

---

[1] The Underwriters who are defendants in this lawsuit are the members of Lloyd's Syndicates 623 and 2623.

[2] The damages were so different because GMWAI's liability was contractually limited to the fees paid on the consulting contract, whereas Mr. Witt's liability was not.

2

claiming the Underwriters failed to settle the malpractice case within policy limits when there was an opportunity to do so, thereby exposing the insureds to excess judgment. The Underwriters, represented by counsel from Akerman Senterfitt, moved to dismiss the complaint, making two arguments: (1) the Court lacks diversity jurisdiction, because La Gorce and one of the Underwriters are citizens of Florida; and (2) bad faith litigation is premature, because the underlying liability litigation is on appeal in state court. On October 11, 2009, one of the defendant Underwriters, Beazley Underwriting Limited ("Beazley"), also represented by Akerman Senterfitt, purported to withdraw its participation in the motion to dismiss and filed its answer to the complaint and a counterclaim. Beazley's one-count counterclaim seeks declaratory judgment that it did not act in bad faith. In paragraph 3 of the counterclaim, Beazley alleges that federal jurisdiction is based on 28 U.S.C. § 1332, because Beazley is a British citizen, La Gorce is a Florida citizen, and the amount in controversy exceeds the jurisdictional minimum.

At this point, La Gorce agrees there is no diversity jurisdiction over the complaint. The only question is whether Beazley's counterclaim should also be dismissed. La Gorce urges dismissal of the entire case, rather than allowing just a sliver to linger in federal court (La Gorce already re-filed the bad faith action against Lloyd's in state court on October 16, 2009). Beazley

responds that its counterclaim has an independent basis for federal jurisdiction and should proceed without regard to the fate of the original claim.

I.

When a district court dismisses an action for lack of federal subject matter jurisdiction, it may nonetheless adjudicate a counterclaim presenting an independent basis for federal jurisdiction. Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 753 (2nd Cir. 1996). Courts have expressed slightly different attitudes about when a compulsory counterclaim should survive dismissal of the main complaint. See Haberman v. Equitable Life Assurance Society, 224 F.2d 401, 409 (5th Cir. 1955) ("compulsory counterclaim is *not required* to be dismissed where it is supported by a proper ground of federal jurisdiction.") (emphasis added); Manufacturers Casualty Ins. Co., v. Arapahoe Drilling Co., 267 F. 2d 5, 7 (10th Cir. 1959) (counterclaims with independent jurisdiction "may *sometimes* be considered though the complaint fail for want of jurisdiction.") (emphasis added; National Research Bureau, Inc. v. Bartholomew, 482 F. 2d 386, 388-89 (3rd. Cir. 1973) ("[where] jurisdiction [over the counterclaim] is independent, the counterclaim *must be allowed* to proceed without regard to the fate of the original claim") (emphasis added).

A rudimentary test was set forth in Switzer Brothers, Inc. v.

4

<u>Chicago Cardboard Co.</u>, 252 F.2d 407, 410 (7th Cir. 1958), a patent
infringement lawsuit in which intervenor Radiant Color Company
asserted an antitrust counterclaim against the patent holder. The
district judge decided that the patent claims should not proceed
(for lack of indispensable parties) and dismissed the entire case.
The Seventh Circuit found fault in the wholesale dismissal because
the antitrust counterclaim was unrelated to the subject matter of
the patent case and was based on an independent ground of
jurisdiction under the antitrust statutes. <u>Id</u>. at 411. "It appears
to be settled," the Seventh Circuit wrote, "that where a
counterclaim states a cause of action seeking affirmative relief
independent of that stated in the complaint, the dismissal of the
complaint does not preclude a trial and determination of the issues
presented by the counterclaim." <u>Id</u>. at 410. A year later, the Tenth
Circuit elaborated:

> But it is apparent in those exceptional cases where a
> counterclaim may survive the jurisdictional failure of a
> complaint that at least three premises must exist.
> Jurisdiction must exist within the scope of the
> allegations of the counterclaim; the claim made in the
> counterclaim must be independent of that made in the main
> case; and, lastly, affirmative relief must be sought.

<u>Arapahoe Drilling Co.</u>, 267 F. 2d at 8. In the present case, the
Court does not perceive any of the conditions for allowing the
counterclaim to continue. Beazley's theory of 28 U.S.C. § 1332
jurisdiction (i.e., that Beazley is British and La Gorce is
Floridian) requires the Court to ignore the citizenship of the

5

other Underwriters.[3] At least one district court, however, has observed that courts should consider the citizenship of all defendants in these circumstances, not just the citizenship of the counter-claiming defendant. In <u>Walters v. International Business Machines, Inc.</u>, 818 F. Supp 1012, 1013 (S.D. Tex. 1993), a Texas plaintiff sued two individual Texans and IBM (a foreign citizen) in Texas court for various state-law torts, and IBM asserted a state-law counterclaim. The plaintiff then amended his complaint to add a federal antitrust claim, and IBM promptly removed the case. Apparently preferring the state court forum, the plaintiff voluntarily dismissed the antitrust claim--thereby eliminating the only basis for federal jurisdiction--and sought remand. But IBM argued the counterclaim should remain in federal court because there was complete diversity between IBM and the plaintiff. The district court disagreed because the citizenship of the Texas defendants was relevant regardless of whether they were parties to the counterclaim:

---

[3]According to Beazley, the other Underwriters are unnecessary to this lawsuit because of a binding clause in the insurance contract that requires all Underwriters to abide by the results of "any suit instituted against any one of [the Underwriters] upon this contract." On the present record, it would be premature for the Court to conclude that a declaratory action by Beazley against a third party concerning Florida common law falls within the binding clause.

Further, in initially moving for dismissal of La Gorce's bad faith complaint, Beazley's lawyer argued that all the Underwriters were necessary because "[t]he subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of his obligations."

6

> To adopt defendants' position would ignore the basic rule
> of diversity jurisdiction requiring all parties to be
> diverse, 28 U.S.C. § 1332, and would create a unique
> exception to this fundamental rule without any reason.
> This Court finds that the better course is to maintain
> continuity with the general rule of diversity and require
> complete diversity between all parties to a lawsuit,
> regardless of independent claims among less than all of
> the parties.

Although this rule may not apply universally, its logic applies

with some force to the present situation. So far as it appears,

each of the Underwriters is an important party to any lawsuit about

Lloyd's failure to settle the underlying malpractice case, because

each one's liability depends on the amount of their individual

subscriptions to the insurance policy. Further, if Beazley's

declaratory judgment counterclaim persisted in federal court, La

Gorce's bad faith claims could be re-asserted as compulsory

counterclaims to declaratory action, bringing the entire

controversy back into federal court based on only the most tenuous

federal connection, if any. See, e.g., Great Lakes Rubber Corp. v.

Herbert Cooper Co., 286 F.2d 631, 633-34 (3rd Cir. 1961) (complaint

dismissed for lack of diversity jurisdiction reasserted as

counterclaim under supplemental jurisdiction).[4]

---

[4] Although 28 U.S.C. § 1367(b) prevents a district court from
exercising supplemental jurisdiction over certain claims when
sitting in diversity, the § 1367(b) limitations apply only to
supplemental claims asserted by plaintiffs. State Nat. Ins. Co.
Inc. v. Yates, 391 F.3d 577, 579 (5th Cir. 2004). If La Gorce's
complaint is dismissed, as Beazley urges it must be, La Gorce would
remain in the federal action only as a defendant and could
presumably assert supplemental state-law claims involving the same
case or controversy against the non-diverse Underwriters. 28 U.S.C.

7

The Court's maintenance of Beazley's counterclaim, which has not proceeded beyond the most initial stages of the case, would be inconsistent with the policy of federal courts to facilitate, to the extent possible, the expeditious resolution of an entire controversy in one proceeding. This Court is not the first to decline jurisdiction over a counterclaim that is alleged to have an independent basis of federal jurisdiction. See e.g., Boynton v. United States, 566 F.2d 50, 52 (9th Cir. 1977); Savannah Barge Line, Inc. v. Acordia Northeast, Inc., 2003 WL 186655 *3 (W.D. Tenn. 2003); Burns v. Rockwood Distributing Co., 481 F. Supp 841, 849 (N.D. Ill. 1979) ("Although, technically speaking, [the] counterclaim appears to be supported by an independent basis of jurisdiction, the court's dismissal of it without prejudice will not impair the defendants' rights.").

In addition, the Court accepts uncritically the alternative argument that was presented by Beazley's lawyer when he was seeking dismissal on behalf of the Underwriters, i.e., that bad faith litigation is premature while the underlying malpractice case is on appeal. Counsel apparently abandoned this position once his client

---

§ 1367(a) (supplemental claims may "involve the joinder. . . of additional parties"). At its whim, Beazley could in turn dismiss its declaratory action, eliminating the basis for the Court's supplemental jurisdiction over La Gorce's re-asserted counterclaim. These possibilities illustrate the imprudence of presiding over Beazley's declaratory judgment counterclaim while dismissing La Gorce's complaint, both of which require litigation of the exact same issue.

8

chose to litigate the bad faith issues. But what's good for the goose is good for the gander; whatsoever a man soweth, that shall he also reap. The plaintiff's complaint is DISMISSED without prejudice and the counterclaim is also dismissed.

**DONE AND ORDERED** in Miami, Florida, December 18, 2009.

*WM M Hoeveler*

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

Copies Furnished:  Counsel of Record